**1 0      2976**

Michael R. Reese
mreese@reeserichman.com
Kim E. Richman
krichman@reeserichman.com
Belinda L. Williams
bwilliams@reeserichman.com
**REESE RICHMAN LLP**
875 Sixth Avenue, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile:  (212) 253-4272

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ JUN 2 9 2010 ★
**BROOKLYN OFFICE**

*Attorneys for Plaintiff and the Proposed Class*

**JOHNSON**

UNITED STATES DISTRICT COURT     **AZRACK, M.J.**

EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIMOTHY DAHL, on behalf of himself and all others similarly situated, | Case No. _____ |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | **DEMAND FOR JURY TRIAL** |
| MOTT'S LLP; DR. PEPPER SNAPPLE GROUP | |
| Defendants. | |

Plaintiff Timothy Dahl ("Plaintiff"), by and through his undersigned counsel, alleges the following based upon his own personal knowledge and the investigation of his counsel. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### NATURE OF THE ACTION

1.      This is a proposed class action against Mott's LLP and Dr. Pepper Snapple Group ("Defendants") for misleading consumers about the nutritional and health qualities of their chocolate drink, Yoo-hoo ("Yoo-hoo" or "Product"), and other similar products.

2.      During the period June 22, 2004 to the present (the "Class Period"), Defendants engaged in a wide-spread marketing campaign to mislead consumers about the nutritional and health qualities of their Product. Specifically, Defendants made misleading statements that their Product was nutritious, healthy to consume and better than other chocolate milk drinks. Defendants were thereby able to command a premium price by deceiving consumers about the healthfulness of their product and distinguishing themselves from similar products, such as Horizon Organic Chocolate Reduced Fat Milk. Defendants were motivated to mislead consumers for no other reason than to take away market share from competing products and increase their own profits.

3.      Defendants conveyed this message through a significant marketing and advertising campaign. For example, Defendants stated on packaging, as well as in marketing, the following: 1) GOOD SOURCES OF VITAMINS AND MINIERALS; 2) 7 Vitamins & Minerals; 3) NO PRESERVATIVES; 4) 99% FAT FREE; and 5) 99% CAFFEINE FREE-- all conveying certain health benefits.

4.      As also stated in Defendants own words on their website: "Not only is this drink chock-full of rich, chocolately goodness it's got five Vitamins and two minerals

1

and is 99% fat and caffeine free!".  Defendants further claim on their website not only that the Product contains "7 VITAMINS & MINERALS", but its "good for you" and "ONLY 70 CALORIES PER BOTTLE!".  *See* http://www.yoo-hoo.com/products/ last visited April 29, 2010.

5.     Defendants' cartoon-like marketing campaigns have always targeted children with both colorful images and various promotional gimmick and prizes for kids. From the beginning, the Product marketed itself to children with product placements with famous athletes: "[T]hrough the efforts of Yogi Berra and his Yankee teammates who supported what was probably the most successful Yoo-hoo advertising campaign in the company's history. The slogans of 'Me-hee for Yoo-hoo' and 'The Drink of Champions' were certainly applicable through the representation of the product by members of the World Champion Yankee teams of the 50s and 60s."  *See* http://www.yoo-hoo.com/about/default.aspx last visited April 29, 2010.

6.     Unfortunately for consumers and, in certain cases their children, all these claims are false and misleading. Defendants' healthful claims are misleading since the Product fails to properly disclose they contain a highly unhealthy, non-nutritious ingredient known as ***partially hydrogenated oil.***  This partially hydrogenated oil is an artificial, man-made substance known to cause a number of health problems, including coronary disease, heart attacks and death.  In fact, the health problems associated with partially hydrogenated oil are so wide-spread and debilitating that doctors have compared the oil to poison and have advised consumers to avoid any consumption of this oil.  As stated in a review of the book "Poison in the Food – Hydrogenated Oils":

> The U.S. population is being slowly poisoned by a single ingredient deliberately added to the human food supply...the World Health Organization tried to outlaw this ingredient decades ago....hundreds of doctors, researchers and scientists are warning us about the detrimental

2

health effects of this ingredient....[T]his substance causes cancer, birth defects, heart disease, diabetes and many other fatal diseases.

In fact, this substance causes a cell-by-cell failure of the human body by destroying the porosity and flexibility of healthy cell membranes. It's like tearing your body down from the inside out.

What ingredient am I talking about? Hydrogenated oils, of course. For decades, food companies...have lied to use about hydrogenated oils, telling us this disease-causing substance was not merely safe, but actually better for your health than other sources of fat like butter. But today, we know this was nothing more than a global deception, a hijacking of science by the food manufacturers in a blatant attempt to get people to buy their high-profit products like margarine, shortening and snack crackers.

*See* http://www.truthpublishing.com/poisonfood_p/yprint-cat21284.htm (last visited April 29, 2010).

7.    Defendants' numerous claims mislead consumers regarding the health and quality of their Product. Defendants' packaging claims that their Product contains a 1) GOOD SOURCES OF VITAMINS AND MINIERALS; 2) 7 Vitamins & Minerals; 3) NO PRESERVATIVES; 4) 99% FAT FREE; and 5) 99% CAFFEINE FREE as well as marketing statements of being "good for you" and containing "ONLY 70 CALORIES PER BOTTLE!", are deceptive.   Plaintiff brings this action to stop Defendants' misleading practice.

## JURISDICTION AND VENUE

8.    This court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §1332(d), because the aggregate claims of the class exceed the sum or value of $5,000,000.00, and there is diversity of citizenship between proposed class members and the Defendants.

9.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(1) and (2). Substantial acts in furtherance of the alleged improper conduct, including the

3

dissemination of false information regarding the quality of their Product, occurred within this district.

## PARTIES

10.     Plaintiff Timothy Dahl ("Plaintiff") is a citizen of New York because Plaintiff is domiciled in Brooklyn, New York and has no intention of changing his domicile. During the Class Period, Plaintiff purchased Defendants' Product at a premium price within the class period from various grocery and retail stores near his neighborhood located in New York.  Plaintiff relied on the misleading and deceptive statements contained on the packaging of the Product that stated 7 Vitamins & Minerals and no preservatives, 99% fat free and caffeine free, as well as marketing statements of being "good for you" and containing only 70 calories. Defendants' widespread advertising and marketing of the Product represented to the Plaintiff it was nutritious, healthy and better than similar products.   Based upon these misrepresentations, Plaintiff reached the conclusion that the Product was in fact healthy and relied upon these representations in making his decision to purchase the Product at the premium price.  As stated herein, Defendants' representations are misleading and deceptive because the Product contains dangerous, unhealthy, non-nutritious partially hydrogenated oil.  Plaintiff suffered injury in that he would not have paid a premium when purchasing the Product had these misrepresentations not been made.

11.     Ownership of Yoo-hoo by Defendant Mott's LLP started in 2001 when Pernod Ricard sold the Product to Cadbury-Schweppes, with production responsibilities falling to Cadbury-Schweppes's Mott's group, and marketing and advertising responsibilities under Snapple. This led to an increased awareness of the once popular beverage.  Company headquarters of Mott's LLP is located in Rye Brook, New York.  In

May 2008, Cadbury-Schweppes split into Cadbury plc and the Dr. Pepper Snapple Group, of which Yoo-hoo is now part.

12.     Dr. Pepper Snapple Group, Inc. (NYSE: DPS) is one of North America's leading refreshment beverage companies, manufacturing, bottling and distributing more than 50 brands of carbonated soft drinks, juices, teas, mixers, waters and other premium beverages, including Yoo-hoo. The company's revenue in 2009 was $5.5 billion dollars. Company headquarters of Dr. Pepper Snapple Group, Inc. is located in Plano, Texas.

## SUBSTANTIVE ALLEGATIONS

13.     The presence of partially hydrogenated oil in food is a major health concern for all Americans and has been cited as a leading cause of heart disease and death. For example, the Harvard School of Medicine reports that:

> A 1993 Harvard study strongly supported the hypothesis that intake of partially hydrogenated vegetables oils contributed to the risk of having a heart attack...It lowers levels of high-density lipoprotein (HDL) particles, which scour blood vessels for bad cholesterol and truck it to the liver for disposal. It also promotes inflammation, an overactivity of the immune system that has been implicated in heart disease, stroke, diabetes, and other chronic conditions....This multiple-pronged attack on blood vessels translates into heart disease and death.

*See*  http://www.hsph.harvard.edu/nutritionsource/nutrition-news/transfats/  (last visited April 29, 2010)

14.     The report: "Poison in the Food – Hydrogenated Oils" also states the dangers of hydrogenated oils as follows:

> Hydrogenated oils are poisons, in the sense that they were never intended for human consumption. They don't exist in nature. They're not found in any natural, raw, unprocessed foods at all. In fact, there is no nutritional requirement whatsoever in the human body for hydrogenated oils....These are the diseases and conditions caused by the consumption of hydrogenated oils...Heart disease, breast cancer, prostate cancer, colon cancer...high bad cholesterol/good cholesterol

5

ratio, high blood sugar levels…tumor growth, progression of type 2 diabetes….

Adams, M.; *Poison in the Food: Hydrogenated Oils* (Truth Publishing, 2009).

15.    Defendants have engaged in a widespread marketing and advertising campaign to portray their Product as nutritious, healthy and safe to eat.  Defendants engaged in this misleading and deceptive campaign to charge a premium and take away market share from other similar products, such as Horizon Organic Chocolate Reduced Fat Milk.  For instance, a 15.5 oz. bottle of Yoo-hoo retails for $1.75, whereas an 8oz. carton of Horizon Organic Chocolate Reduced Fat Milk sells for $1.50.

16.    Defendants grab market share, for instance, by stating on the Yoo-Hoo label and web site certain health benefits, such as a good source of vitamins and minerals; 2) 7 vitamins and minerals; 3) NO PRESERVATIVES; 4) 99% FAT FREE; and 5) 99% CAFFEINE FREE:





http://www.drinkyoo-hoo.com/products/default.aspx (last visited April 29, 2010).

17.     In addition to these numerous claims upon Defendants' Product itself that mislead consumers as to the health and quality of their Product, Defendants' deceptively market statements of being "good for you" and containing "ONLY 70 CALORIES PER BOTTLE!" as follows:



http://www.drinkyoo-hoo.com/products/default.aspx (last visited April 29, 2010) (emphasis added).

18.     Defendants further market themselves, as well as pride themselves upon the tradition of their founders, the Olivieri family, by claiming upon their website as follows: "In keeping with his policy of natural ingredients, Mr. Natale Olivieri did not want to introduce a chocolate drink unless he could eliminate spoilage problems without the addition of any chemicals or preservatives.":

8



http://www.truthpublishing.com/poisonfood_p/yprint-cat21284.htm (last visited April 29,

2010) (emphasis added).

19.     In combination with the misleading claims made on their packaging,

Defendants have conducted multi-million dollar, widespread marketing and advertising

campaigns to misleadingly and deceptively convey the message that their Product is

nutritious and healthy.

20.     Defendants' packaging and marketing of their Product has targeted kids

over time and across the nation, from athlete endorsements to their classic yellow and

blue cartoon label still popular among children in this country today.  Parents are also

deceived by the Product, which purports to be a healthy milk-based drink, but is instead a

"chocolate drink", not "chocolate milk".  According to the ingredients in Yoo-hoo, the

Product contains virtually no milk and is instead mostly water, sugars, milk by-products

and chemicals.  Unfortunately for consumers and their children, the Product is not based

9

upon healthy ingredients as marketed and advertised, but rather includes dangerous, non-nutritious, unhealthy partially hydrogenated oil.

21.     Statements on the front of Defendants' packaging portraying Yoo-hoo as healthy and nutritious are deceptive and misleading to kids and adults alike when the actual ingredients contain dangerous partially hydrogenated oil.

## CLASS ALLEGATIONS

22.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons in the United States who purchased Yoo-hoo and other similar products from Defendants during the Class Period (the "Class"). Excluded from the Class are officers and directors of the Defendants, members of the immediate families of the officers and directors of the Defendants, and their legal representatives, heirs, successors or assigns and any entity in which they have or have had a controlling interest.

23.     At this time, Plaintiff does not know the exact number of Class members, however, given the nature of the claims and the number of retail stores selling Defendants' Product nationally, Plaintiff believes that Class members are so numerous that joinder of all members of the Class is impracticable.

24.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

> a. Whether Defendants labeled, marketed, advertised and/or sold the Product to Plaintiff and those similarly situated using false, misleading and/or deceptive statements or representations, including statements or

representations concerning the nutritional and health qualities of their Product;

b. Whether Defendants omitted and/or misrepresented material facts in connection with the sales of their Product;

c. Whether Defendants participated in and pursued the common course of conduct complained of herein; and

d. Whether Defendants' labeling, marketing, advertising and/or selling of their Product as healthy and nutritious constitutes an unfair or deceptive consumer sales practice.

25. Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased Defendants' Product in a typical consumer setting and sustained damages from Defendants' wrongful conduct.

26. Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in litigating complex class actions. Plaintiff has no interests which conflict with those of the Class.

27. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

28. The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Civ. R. 23(b)(2) are met as Defendants have acted or refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

29. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the

challenged acts, whereas another might not.  Additionally, individual actions may be dispositive of the interests of the Class, although certain Class members are not parties to such actions.

30.     Defendants' conduct is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole.  As such, Defendants' systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

### CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(False Advertising under the Lanham Act, 15 U.S.C. § 1125 *et seq.*)**

31.     Plaintiff realleges and incorporates the above paragraphs of this Class Action Complaint as if set forth herein.

32.     Defendants have made and distributed, in interstate commerce and in this district, products that make false or misleading statements of fact regarding their content.  All of the products described herein were placed into interstate commerce by Defendants and sold throughout the country and this District.

33.     These products contain on their labels actual misstatements and/or misleading statements and failures to disclose, including, among others, the statement that such contain 1) 7 Vitamins & Minerals; 2) NO PRESERVATIVES; 3) is 99% FAT FREE; and 4) is 99% CAFFEINE FREE.  Advertising statements also falsely represent the Product as being, among other things, "good for you".

34.     These false and/or misleading statements and omissions actually deceive, or have a tendency to deceive, any reasonable consumer.  This deception is material in that it is likely to influence the purchasing decision of a reasonable consumer.

35.     Plaintiff seeks an order directing Defendants to destroy all misleading and deceptive advertising materials and products in accordance with 15 U.S.C. § 1118.

36.     Plaintiff further seeks an injunction under 15 U.S.C. § 1116 restraining Defendants, their agents, employees, representatives, and all persons acting in concert with Defendants from engaging in further acts of false advertising, and ordering removal of all of Defendants' false advertisements and products possessing misleading statements or omissions of fact.

## SECOND CAUSE OF ACTION
### (Violations of Texas Business & Commerce Code § 17.46)

37.     Plaintiff realleges and incorporates the above paragraphs of this Class Action Complaint as if set forth herein.

38.     Defendants engaged in false and misleading marketing concerning the nutritional and health qualities of their Product.

39.     As fully alleged above, by advertising, marketing, distribution and/or selling the Product to Plaintiff and other members of the Class, Defendants engaged in, and continues to engage in, deceptive acts and practices.

40.     Plaintiff and other members of the Class further seek to enjoin such unlawful deceptive acts and practices as described above.  Each of the Class members will be irreparably harmed unless the unlawful actions of Defendants are enjoined in that Defendants will continue to falsely and misleadingly advertise the healthy nature of their Product.  Towards that end, Plaintiff and the Class request an order granting them injunctive relief as follows:  Order disclosures and/or disclaimers on the labeling or advertising of the Defendants' Product and/or remove the partially hydrogenated oil from the ingredients.

41.     Absent injunctive relief, Defendants will continue to manufacture and sell their Product as a healthy and nutritious food product to the detriment of consumers.

42.     In this regard, Defendants have violated, and continues to violate, § 17.46 of the Texas Business & Commerce Code, which makes deceptive acts and practices unlawful.  As a direct and proximate result of Defendants' violation of §17.46 as

13

described above, Plaintiff and other members of the Class have suffered damages, in an amount to be determined at trial.

43.     Plaintiff further seeks an injunction under § 17.47 restraining Defendants, their agents, employees, representatives, and all persons acting in concert with Defendants from engaging in further acts of false advertising, and ordering removal of all of Defendants' false advertisements and products possessing misleading statements or omissions of fact.

## THIRD CAUSE OF ACTION
### (Violation of New York General Business Law § 349)

44.     Plaintiff realleges and incorporates the above paragraphs of this Class Action Complaint as if set forth herein.

45.     Defendants engaged in false and misleading marketing concerning the nutritional and health qualities of their Product.

46.     As fully alleged above, by advertising, marketing, distribution and/or selling the Product to Plaintiff and other members of the Class, Defendants engaged in, and continues to engage in, deceptive acts and practices.

47.     Plaintiff and other members of the Class further seek to enjoin such unlawful deceptive acts and practices as described above.  Each of the Class members will be irreparably harmed unless the unlawful actions of Defendants are enjoined in that Defendants will continue to falsely and misleadingly advertise the healthy nature of their Product.  Towards that end, Plaintiff and the Class request an order granting them injunctive relief as follows:  Order disclosures and/or disclaimers on the labeling or advertising of the Defendants' Product and/or remove the partially hydrogenated oil from the ingredients.

48.     Absent injunctive relief, Defendants will continue to manufacture and sell their Product as a healthy and nutritious food product to the detriment of consumers.

49.     In this regard, Defendants have violated, and continues to violate, § 349 of the GBL, which makes deceptive acts and practices unlawful.  As a direct and proximate

result of Defendants' violation of § 349 as described above, Plaintiff and other members of the Class have suffered damages, in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (Breach of Express Warranty)

50.    Plaintiff realleges and incorporates the above paragraphs of this Class Action Complaint as if set forth herein.

51.    Defendants provided Plaintiff and other members of the Class with written express warranties including, but not limited to, warranties that their Product was healthy and had particular healthy characteristics as set forth above.

52.    Defendants breached these warranties which resulted in damages to Plaintiff and other members of the Class, who overpaid for their Yoo-hoo, which contained dangerous, unhealthy, non-nutritional partially hydrogenated oil that did not otherwise conform to Defendants' warranties.

53.    As a proximate result of the breach of warranties by Defendants, Plaintiff and Class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that did not conform to what was promised as promoted, marketed, advertised, packaged and labeled by Defendants, and they were deprived of the benefit of their bargain and spent money on products that did not have any value or had less value than warranted or products that they would not have purchased and used had they known the true facts about them.

## FIFTH CAUSE OF ACTION
### (Breach of Implied Warranty of Merchantability)

54.    Plaintiff realleges and incorporates the above paragraphs of this Class Action Complaint as if set forth herein.

55.    Plaintiff and other Class members purchased Defendants' Product, which were promoted, marketed, advertised, packaged and labeled as healthy and as having particular healthy characteristics as set forth above. Pursuant to these sales, Defendants impliedly warranted that their Product would be merchantable and fit for the ordinary

purposes for which such goods are used and conform to the promises or affirmations of fact made in the Product's promotions, marketing, advertising, packaging and labels. In doing so, Plaintiff and other Class members relied on Defendant's representations that their Product was healthy and had particular healthy characteristics as set forth above and at or about that time, Defendants sold their Product to Plaintiff and other Class members. By Defendants' representations regarding the reputable nature of their companies and related entities, and by their promotion, marketing, advertising, packaging and labeling of their Product, Defendants warranted that their Product is healthy and has particular healthy characteristics as set forth above. Plaintiff and Class members bought Defendants' Product, relying on their representations that their Product was healthy and had particular healthy characteristics when, in fact, it was not in that it contained dangerous, non-nutritious, unhealthy partially hydrogenated oil that did not otherwise conform to Defendants' warranties.

56. Defendants breached the warranty implied at the time of sale in that Plaintiff and Class members did not receive goods that were healthy or that had the healthy characteristics represented and thus, the goods were not merchantable as fit for the ordinary purposes for which such goods are used or as promoted, marketed, advertised, packaged, labeled or sold.

57. As a proximate result of this breach of warranty by Defendants, Plaintiff and Class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that did not conform to what was promised as promoted, marketed, advertised, packaged and labeled by Defendants, and they were deprived of the benefit of their bargain and spent money on products that did not have any value or had less value than warranted or products that they would not have purchased and used had they known the true facts about them.

## SIXTH CAUSE OF ACTION
### (For Breach of Implied Warranty of Fitness for Particular Purpose)

58.     Plaintiff realleges and incorporates the above paragraphs of this Class Action Complaint as if set forth herein.

59.     Plaintiff and other Class members purchased Defendants' Product, which was promoted, marketed, advertised, packaged and labeled as healthy and as having particular healthy characteristics as set forth above. Pursuant to these sales and by their promotion, marketing, advertising, packaging and labeling, Defendants impliedly warranted that their Product was healthy and had particular healthy characteristics as set forth above. Plaintiff and Class members bought Yoo-hoo from Defendants, relying on their skill and judgment in furnishing suitable goods as well as their representations that their Product was healthy and had particular healthy characteristics as set forth above. Defendants' Product, however, contained dangerous, non-nutritious, unhealthy partially hydrogenated oil that did not otherwise conform to Defendants' warranties.

60.     Defendants breached the warranty implied at the time of sale in that Plaintiff and Class members did not receive a Product that was healthy or that had the particular healthy characteristics represented, and thus the goods were not fit for the purpose as promoted, marketed, advertised, packaged, labeled or sold.

61.     As a proximate result of this breach of warranty by Defendants, Plaintiff and Class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for products that did not conform to what was promised as promoted, marketed, advertised, packaged and labeled by Defendants, and they were deprived of the benefit of their bargain and spent money on products that did not have any value or had less value than warranted or products they would not have purchased and used had they known the true facts about them.

## SEVENTH CAUSE OF ACTION
### (Deceit and/or Misrepresentation)

17

62. Plaintiff realleges and incorporates the above paragraphs of this Class Action Complaint as if set forth herein.

63. Defendants, through their labeling, advertising and marketing of their Product, make uniform representations and offers regarding the quality of their Product as described above. Defendants engaged in, and continues to engage in, such fraudulent, misrepresentative, false and/or deceptive acts with full knowledge that such acts were, and are, in fact, misrepresentative, false or deceptive.

64. The aforementioned misrepresentations, deceptive and/or false acts and omissions concern material facts that are essential to the analysis undertaken by Plaintiff, and those similarly situated, in deciding whether to purchase Defendants' Product.

65. Plaintiff, and those similarly situated, would have acted differently had they not been misled – *i.e.,* they would not have paid money for the Product in the first place.

66. Defendants have a duty to correct the misinformation they disseminate through their advertising of Yoo-hoo. By not informing Plaintiff and those similarly situated, Defendants breached this duty. Defendants also gained financially from, and as a result of this breach.

67. By and through such deceit, misrepresentations and/or omissions, Defendants intended to induce Plaintiff, and those similarly situated, to alter their position to their detriment.

68. Plaintiff and those similarly situated, justifiably and reasonably relied on Defendants' misrepresentations, and, as such, were damaged by Defendants.

69. As a direct and proximate result of Defendants' deceit and/or misrepresentations, Plaintiff, and those similarly situated, have suffered damages in an amount equal to the amount they paid for Defendants' Product. The exact amount of this difference will be proven at trial.

70.    Defendants acted with intent to defraud, or with reckless or negligent disregard of the rights of, Plaintiff, and those similarly situated.

71.    Plaintiff, and those similarly situated, are entitled to punitive damages.

## EIGHTH CAUSE OF ACTION
### (Unjust Enrichment)

72.    Plaintiff realleges and incorporates the above paragraphs of this Class Action Complaint as if set forth herein.

73.    As a result of Defendants' deceptive, fraudulent and misleading labeling, advertising, marketing and sales of their Product, Defendants were enriched, at the expense of Plaintiff, and all others similarly situated, through the payment of the purchase price for Defendants' Product.

74.    Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiff, and all others similarly situated, in light of the fact that the Product purchased by Plaintiff, and all others similarly situated, were not what Defendants purported it to be.  Thus, it would be unjust or inequitable for Defendants to retain the benefit without restitution to Plaintiff, and all others similarly situated, for the monies paid to Defendants for such Product.

75.    THEREFORE, Plaintiff prays for relief as set forth below.

## PRAYER FOR RELIEF

THEREFORE, Plaintiff demands judgment as follows:

-    Certification of the Class, certifying Plaintiff as representative of the Class, and designating his counsel as counsel for the Class;

-    A declaration that Defendants have committed the violations alleged herein;

-    For restitution and disgorgement pursuant to, without limitation, the Texas

Business & Commerce Code § 17.46;

-    For declaratory and injunctive relief pursuant to, without limitation, the Texas Business & Commerce Code § 17.46;

-    For restitution and disgorgement pursuant to, without limitation, the New York General Business Law § 349;

-    For declaratory and injunctive relief pursuant to, without limitation, the New York General Business Law § 349;

-    An award of compensatory damages, the amount of which is to be determined at trial;

-    For punitive damages;

-    For interest at the legal rate on the foregoing sums;

-    For costs of suit incurred; and

-    For such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: June 22, 2010                                 Respectfully submitted,

                                                     **REESE RICHMAN LLP**
                                                     Kim E. Richman
                                                     Michael R. Reese
                                                     Belinda L. Williams
                                                     875 Sixth Avenue, 18th Floor
                                                     New York, New York 10001
                                                     Telephone: (212) 643-0500
                                                     Facsimile: (212) 253-4272

                                                     *Attorneys for Plaintiff*